UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTY J. DOWNING,

        Plaintiff,

                                      Case No. 11-cv-15015
                                      Honorable Gershwin A. Drain

v.



J.C. PENNEY, INC.,

        Defendant.

_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.      INTRODUCTION**

Plaintiff, Kristy J. Downing, filed the Complaint against Defendant, J.C. Penney Corporation, Inc. ("J.C. Penney") alleging negligence by J.C. Penney for salon services she received at J.C. Penney's hair salons located in Canton, Michigan and Ann Arbor, Michigan.[1]  Plaintiff claims that on March 15, 2010, she visited J.C. Penney's salon in Canton, Michigan and her stylist cut more than three inches from the sides and front of her hair.   Plaintiff denies giving her stylist permission to cut or trim her hair.  Plaintiff further claims that on May 27, 2011, she visited J.C. Penney's Ann Arbor salon and her stylist misapplied hair relaxer resulting in damage to her hairline.  Plaintiff maintains that as a result of her experiences at J.C. Penney's salons, she was embarrassed and

---

[1]  The only claim remaining is Count IV alleging Negligence.  Prior to this case's reassignment to this Court, Judge Robert H. Cleland dismissed Counts I through III in his Order Granting in Part Defendant's Motion for Summary Judgment. *See* Dkt. No. 19.

humiliated.   This Court conducted a bench trial on December 5, 2012, December 6, 2012 and December 7, 2012.

## II.   FINDINGS OF FACT

Plaintiff is an attorney who obtained salon services from Defendant J.C. Penney at Defendant's salons in Canton, Michigan, Ann Arbor, Michigan,  and Novi, Michigan between May 25, 2008 through May 27, 2011.

The hair stylists employed at J.C. Penney fill out notes on  "Travelers" a/k/a "Client Service Tickets" and the receptionist enters the stylist's notes into the computer system.

Damage to the hair may result if a hair relaxer treatment is left on the hair too long.

Hair relaxer application can also cause irritation or burning to the scalp.  Damage to the hair may also occur during application of relaxer treatment if the person is under stress, or is taking medication.

Weight loss can cause hair loss.

Plaintiff has filed previous lawsuits requesting damages for emotional harm, specifically a complaint against Foley & Lardner, Plaintiff's previous employer, was filed in 2009, wherein Plaintiff alleged pay discrimination, hostile work environment, eavesdropping, wiretapping and stalking on the part of Foley's employees, among other allegations.  Plaintiff sought damages for mental anguish, embarrassment and damage to professional reputation.

Plaintiff also filed a complaint against Lifetime Fitness in 2009 claiming harassment from Lifetime's employees, among other allegations.  Plaintiff's membership at Lifetime was terminated. Thereafter, on March 12, 2010, Plaintiff was arrested, handcuffed, and taken to the police station for trespassing on Lifetime property.  On May 24, 2011, summary judgment was granted in favor

of Lifetime and Plaintiff's complaint was dismissed.

Katherine Downing is Plaintiff's mother. Katherine Downing is a licensed cosmetologist and has been providing hair care services since 1969. She has owned a salon for thirty years. Katherine Downing had no knowledge of this lawsuit, nor of any of the factual allegations raised herein, prior to receiving a subpoena to appear for her deposition. She never discussed Plaintiff's dissatisfaction concerning her hair care services nor her hair issues with Plaintiff prior to receiving the subpoena.

Katherine Downing has thought that it might be beneficial for her daughter to see a psychologist, although she cannot recall if she ever suggested this outright to her daughter. Around the time that Plaintiff came back to Michigan after working at Foley & Lardner in Wisconsin, she believed a psychologist might help because Plaintiff was under the impression that people were out to get her or trying to do things to her.

Angela Powell provided hair relaxer treatments to Plaintiff's hair at J.C. Penney's Canton, Michigan salon between March 12, 2009 through March 15, 2010. Powell performed a total of six relaxer application treatments during this time frame.

The Canton salon is located at the back of the J.C. Penney store. The Canton store has greeters at the front of the store. The greeters generally will welcome guests to the store "Welcome to J.C. Penney" as well as thank customers as they are exiting the store "Thank you for shopping at J.C. Penney."

Angela Powell has been a licensed cosmetologist since 1985. She has worked for J.C. Penney for twenty (20) years.

On March 15, 2010, Plaintiff had Angela Powell perform relaxer services on her hair.

Powell requested permission from Plaintiff to trim her hair after the relaxer application. Powell trimmed 3/4 of an inch or less from Plaintiff's hair. Powell did not charge Plaintiff for the trim as was Powell's usual practice. Powell did not deem it fair to charge Plaintiff $28.00 for a hair cut when Powell was only trimming a little bit off of Plaintiff's hair length. Powell swept up her station when she was finished with Plaintiff's services.

On the March 15, 2010 traveler ticket, Powell indicated "trim ends as always, 3/4 in breakage, hair is growing well, upset with trim" and the receptionist entered this information into the computer system.

Plaintiff recalls facing away from the mirror during Powell's services. She further remembers arguing with Powell about the amount of hair that was trimmed off of the front and sides of her hair, which she estimates was 3" or more of her hair. Powell denied trimming more than 1/4" from Plaintiff's hair, pointed to the floor where the trimmed hair was still located to demonstrate that she had not trimmed that much off, contrary to Plaintiff's assertions.

Megan Posa was the Canton salon manager on March 15, 2010.

Posa has been a licensed cosmetologist since 1991. She worked for J.C. Penney for eighteen (18) years. In 2007, Posa was promoted to manager to open the salon in Canton, Michigan.

On Tuesday, March 16, 2010, Plaintiff wrote a letter to Posa expressing her dissatisfaction with Powell's services on March 15, 2010. In the letter, Plaintiff complains that "I did not ask for a cut, nor a trim. I would estimate that as much as 1-3 inches was cut off of the back of my hair." The letter also included a photograph of Plaintiff's hair.

Upon receiving the letter, Posa spoke with Powell about Plaintiff's March 16, 2010 letter. Posa then telephoned Plaintiff and asked Plaintiff what could be done to make her happy with her

hair care services.  Posa gave Plaintiff a refund.

After March 15, 2010, Plaintiff did not return to Powell for hair care services, however she did return to the salon for other services.  Powell recalls observing Plaintiff at the salon on at least two occasions subsequent to March 15, 2010.

Between the Fall of 2010 and the Spring of 2011, Plaintiff patronized J.C. Penney's Ann Arbor, Michigan salon for her hair care services.

On each occasion that Plaintiff patronized the Ann Arbor salon, she received her hair care services from Angela Wimberly.  She received a total of eight relaxer treatments from Wimberly.

Angela Wimberly has been a licensed cosmetologist for fifteen (15) years.  She worked for J.C. Penney for seven (7) years.  Wimberly became a hair care instructor thirteen (13) years ago. She estimates that during the course of her career, she performed about forty (40) hair relaxer treatments per month.  She has always applied relaxer treatments beginning at the back quadrant of the head and finishes the application at the hairline last.

Prior to her May 27, 2011 hair appointment, Plaintiff signed a treatment consent form prior to receiving her relaxer treatments. The treatment consent form states in relevant part: "The chemical service I have requested involves the application of chemicals which may cause damage to my hair, skin, scalp or other parts of my person."

On May 27, 2011, Plaintiff came to the Ann Arbor, Michigan salon for a relaxer treatment. Plaintiff did not sign a treatment consent form prior to her services, however she had signed a treatment consent form on previous occasions when she had requested a relaxer treatment.

On May 27, 2011, Wimberly began applying the relaxer to the back quadrant of Plaintiff's head and finished with her hairline.  Halfway through the application, Plaintiff stopped Wimberly

and asked her how she was applying the relaxer.

Wimberly used Mizani's Relaxer Product for Sensitive Scalp. The back of this product states, "FOR PROFESSIONAL USE ONLY. NOT FOR RESALE. WARNING: THIS PACKAGE IS DESIGNED AND INTENDED FOR USE BY PROFESSIONALS ONLY. INSTRUCTIONS ARE FOR PROFESSIONALS, NOT CONSUMERS. SAFETY WARNINGS[,]Read and Follow the Relaxer Application Directions Completely before using. Failure to [follow the] instructions or warnings or other misuse of the product can cause serious injury to eyes or skin and can damage hair or result in permanent hair loss. The instructions state: "1. Apply protective base on skin around hairline and ears. Avoid contact with hair. 2. Set time according to Relaxer Timing Chart. 3. Wearing disposable protective gloves, apply generous amount of relaxer to most resistant area first using the back of a rattail comb or application brush. DO NOT apply to scalp. 4. Continue application throughout entire head, parting in thin sections. Apply to hairline last . . . ."

Once Wimberly finished the application, she and Plaintiff proceeded to the shampoo bowl so that the chemical in the relaxer could be deactivated with neutralizing shampoo. On the way to the shampoo bowl, Plaintiff asked to speak with a manager. Karen Minix, the salon manager, was on vacation that day, and Wimberly informed her that the manager was not there. Plaintiff asked if she could speak with someone at the front desk and Wimberly said she could do so after her shampoo.

Plaintiff went to speak with someone at the receptionist desk.

After speaking with someone at the receptionist desk, Plaintiff returned to Wimberly's chair and proceeded to curse at Wimberly, stating "I just want my damn hair styled the same way." At this point, Wimberly informed Plaintiff that she would not continue servicing the Plaintiff. She and

Plaintiff went to the receptionist desk and Wimberly found another stylist, Suri, to finish drying and styling Plaintiff's hair. Suri finished Plaintiff's hair without incident. While Suri was finishing up with the Plaintiff, Wimberly stayed in the stylist's back room and did not go out onto the salon floor.

After her May 27, 2011 appointment, Plaintiff contacted Minix by electronic mail to complain about Wimberly's services. She advised Minix that Wimberly had misapplied the relaxer treatment, beginning at the front of the hairline and proceeding to the back quadrant of the head. She requested that Minix provide her with a replacement stylist.

Plaintiff also contacted Minix by telephone and spoke with her at various times during May and June of 2011. Minix, after speaking with Wimberly, concluded that J.C. Penney could not provide Plaintiff with a replacement stylist and informed Plaintiff of this.

On Friday, June 17, 2011, Plaintiff sent an email to Minix indicating her dissatisfaction with how she handled Plaintiff's complaint. Plaintiff also asked that Minix forward the email to Minix's supervisor, and indicated in conclusion, "Be sure that if I do not hear from you or your manager on a replacement stylist and more dignified treatment I promise you, I will have my lawyers file a lawsuit against JC Penney and its stylists."

In response to Plaintiff's June 17, 2011 email correspondence, Minix sent a response stating, "The last time we talked I explained to you that we provided you with the best service provider possible and you were not satisfied. We will not be able to offer you a further recommendation at this time."

On June 21, 2011, Minix's supervisor, Mandy Hauserman, Assistant Store Manager for the Ann Arbor store, responded to Plaintiff's email correspondence indicating that: "As I can see with your history with our Company we can not meet your needs in our Salons. For your satisfaction I

-7-

stand by my Salon Leader in recommending you to another salon that can fulfill your needs.  I apologize for your experience in May and authorize our Salon to give you a refund for your relaxer service."

After May 27, 2011, Plaintiff performed her own relaxer treatments using the same Mizani Sensitive Scalp product that Wimberly used on May 27, 2011.

## III.   CONCLUSIONS OF LAW

In order for Plaintiff to establish her claim of negligence, it is her burden to prove (1) Defendant owed her a duty; (2) Defendant breached that duty; (3) the breach was the proximate cause of Plaintiff's injuries; and (4) Plaintiff suffered damages.  *See Smith v. Stolberg*, 231 Mich. App. 256, 258; 586 N.W.2d 103 (1998).  A salon owes a patron a duty to provide reasonable hair care as compared to a typical salon in the area.  *See Smith v. Artiste Perm. Wave Shoppe*, 293 Mich. 441, 443-44; 292 N.W. 361 (1940).  In *Skinner v. Square D Co.*, 445 Mich. 153; 516 N.W.2d 475 (1994), the Michigan Supreme Court explained the Plaintiff's burden in establishing causation:

> The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.  A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.  A mere possibility that a defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two.  There must be substantial evidence which forms a reasonable basis for the inference of negligence.  There must be more than a mere possibility that unreasonable conduct of the defendant caused the injury.

> *             *             *

> The evidence need not negate all other possible causes, but such evidence must exclude other reasonable hypotheses with a fair amount of certainty . . . . However, if such evidence lends equal support to inconsistent conclusions or is equally consistent with contradictory hypotheses, negligence is not established.

-8-

*Id.* at 156-57 (internal citations omitted).  Here, Plaintiff has not proven her claim for negligence.  While it cannot be questioned that J.C. Penney owed Plaintiff a duty to use reasonable care in performing hair care services, Plaintiff has failed to establish the requisite elements of breach, causation and damages.

Plaintiff maintains that Powell breached the standard of care by cutting off three inches or more from the front and sides of her hair without permission to do so.   However, the evidence supports Powell's version of what occurred during Plaintiff's salon services on March 15, 2010.  During trial, Plaintiff provided several photographs purporting to show her hair length in the Spring and Fall of 2009.  *See* Plf.'s Exs. 104-109.  She further provided a photograph taken after her hair appointment on March 15, 2010.  *See* Plf.s' Ex. 103.  The photograph is grainy and unclear.  It lacks the sharpness and clarity necessary to clearly see her hair length.  Thus, whether her hair had been cut more than three inches at the sides and the front is not discernible.  It is not clear to the Court whether Plaintiff's hair is in fact shorter than it was during the preceding months because, in addition to the poor quality of the photograph, her hair has been pulled back, away from her face.  The photographs taken prior to March 15, 2010 all show Plaintiff wearing her hair down.  Thus, the Court cannot determine whether her hair is shorter in length compared to the pre-March 15, 2010 photographs.

Further, both Powell and Posa testified that a cut or trim subsequent to a relaxer application is recommended as the best way to keep the hair healthy.  The split ends need to be removed as this is the only way to prevent further breakage and damage to the hair shaft.  Thus, by trimming Plaintiff's hair after her relaxer application, Powell did not a breach the standard of care.

Plaintiff testified that on prior occasions, Powell requested permission to trim her hair and

-9-

Plaintiff always gave her permission for a trim.   While Plaintiff denies giving Powell permission for a trim on March 15, 2010, this testimony is less credible considering she had given her permission on the five previous occasions she had gone to Powell for relaxer services. Additionally, Plaintiff's memory concerning the amount of hair removed during the trim appears to have faded in the last two and half years.  In her March 16, 2010 letter to Posa, she complained that Powell had removed "as much as 1-3 inches . . . off of the back of my hair."  Yet, during these proceedings Plaintiff testified that "Powell took the liberty of chopping off 3 inches or more of my hair during my service."   Furthermore, Plaintiff did not call a single witness, other than herself, to corroborate the extreme haircut she allegedly received from Powell.  Plaintiff's mother, a veteran hairstylist, had no knowledge of the bad hair cut until just prior to her deposition which occurred in June of 2012.

Moreover, Plaintiff never testified that Powell's hair cut required her to wear a wig or that she missed work or other professional engagements because she was humiliated to be in public. Thus,  Plaintiff has failed in her burden to show that Powell breached the standard of care, or that she has suffered any compensable damages as a result of the alleged breach.

In regard to her claim that Wimberly misapplied hair relaxer, the evidence supports Wimberly's version of what occurred on May 27, 2011.  Wimberly has been a licensed cosmetologist for fifteen years, and an instructor for thirteen years.  She has always applied relaxer treatments beginning at the back quadrant of the head and finishes the application at the hairline last. She estimates that during her career, she performed roughly forty relaxer treatments per month.  She has never had any customer, except for Plaintiff, complain about her improperly applying a relaxer treatment, nor has she ever had another stylist finish one of her clients due to the client's

unhappiness with her services.

Additionally, Plaintiff never complained in her email correspondence directed to J.C. Penney staff, nor at the time of the application, that her scalp was irritated or burning or that she felt any physical injury as a result of Wimberly's relaxer application. Plaintiff has never gone to a doctor nor did she produce any expert testimony corroborating her claim that Wimberly's relaxer application resulted in damage to her hairline.

Further, Plaintiff introduced photographs purporting to show her damaged hairline as a result of Wimberly's negligent relaxer application. *See* Plf.'s Exs. 110-117. All of these photographs were taken in November of 2011, or six months after Plaintiff's May 27, 2011, appointment with Wimberly. These photographs purport to show that Plaintiff's hairline was damaged. However, Plaintiff has failed to show that her hairline before the treatment was different from what it was afterwards. Because the Plaintiff has an irregular hairline as shown in the photographs it is slightly more difficult than normal to discern damage to it. Plaintiff has failed to prove there was damage to her hairline.

Plaintiff admits that she performed her own relaxer treatments after May 27, 2011, using the same Mizani product that Wimberly used. Thus, even if the Court were to conclude that Wimberly breached the standard of care, the Court cannot conclude as a matter of law that Wimberly's application caused the damage to Plaintiff's hairline. The Mizani product's warning label indicates that its use is for professionals only, yet Plaintiff is not a licensed cosmetologist. Thus, it is entirely possible that any damage to Plaintiff's hair occurred as a result of Plaintiff's self application of the Mizani product. "The evidence need not negate all other possible causes, but such evidence must exclude other reasonable hypotheses with a fair amount of certainty . . . . However, if such evidence

-11-

lends equal support to inconsistent conclusions or is equally consistent with contradictory hypotheses, negligence is not established." *Skinner*, 445 Mich. 153 at 157.

Thus, for the reasons identified above, Plaintiff has failed to prove her prima facie negligence claim. She has failed to come forward with evidence that a breach occurred on March 15, 2010 or that a breach occurred on May 27, 2011. Nor has she established causation or damages as a result of J.C. Penney's hair care services.

## IV.   CONCLUSION

Accordingly, IT IS ORDERED that judgment will be entered in favor of Defendant and against Plaintiff as to Count IV; negligence.

SO ORDERED.

Dated: December 11, 2012                    /s/Gershwin A Drain
                                            GERSHWIN A. DRAIN
                                            United States District Judge